## Shevalier v. Postal Telegraph Company, Appellant.

*Telegraph companies—Eminent domain—Damages—Trespass—Petition for viewers.*

Where a telegraph company tortiously enters upon land without payment of damages to the owner, or securing the same, and without any agreement with the owner, erects its poles on the land, and after the expiration of several years files a petition for the appointment of viewers to assess the damages sustained by reason of the location and construction of its line, the damages are to be assessed not as of the date of the original

entry, or as belonging to the owner at that time, but as of the date of the filing of the petition, and as belonging to the person who is owner of the land at the time the petition is filed. In such a case the damages are to be assessed from the time when the greatest injury is imposed upon the lands, and that is when the company first indicates by lawful proceedings its intention to impose a permanent servitude. For the trespass up to the time of filing the petition, the owner has his remedy at law. For the injury caused by the imposition of the permanent servitude, he has his remedy in the proceedings before the viewers.

In the proceedings before the viewers in such a case, the evidence is limited to the condition of the lands at the time of the filing of the petition.

In a proceeding before viewers to assess damages to land by reason of the erection of a telegraph line on a highway, if there is evidence that the value of the land as affected by the telegraph line was less than its value as unaffected by the line, such evidence must be submitted to the jury, and it would be error for the court to limit the recovery to nominal damages.

*Eminent domain—Damages—Interest.*

In condemnation proceedings it is error for the court to instruct the jury that they may add interest, although the instruction is qualified as follows: "not as damages, but by way of compensation." In such a case the jury should be instructed that they may add such sum to the damages as in their judgment will compensate for the delay in paying it, not to exceed legal interest, and that it may be as much less as they see fit to make it.

Argued Jan. 19, 1903. Appeal, No. 26, Jan. T., 1903, by defendant, from judgment of C. P. Wayne Co., May T., 1901, No. 65, on verdict for plaintiff in case of Mary E. Shevalier v. Postal Telegraph Company. Before BEAVER, SMITH, W. W. PORTER, W. D. PORTER and MORRISON, JJ. Affirmed.

Appeal from award of jury of view. Before PURDY, P. J. The facts appear by the opinion of the Superior Court.

At the trial the court admitted under objection and exception testimony of neighboring farmers as to the market value of the land on February 2, 1901, unaffected by the telegraph line and its market value as affected by the telegraph line. [1, 2]

Defendant presented the following points :

1. It appearing from the evidence that the line of defendant's telegraph was built and completed in or about the year 1883, and that the plaintiff did not obtain title to nor possession of her premises until the year 1898, the damages, if any, occasioned by the entry upon and appropriation of the telegraph route in question were due to the owner of the fee at

the time of such entry and appropriation and completion of said line in 1883, and cannot be recovered by the plaintiff in this case, who is a subsequent grantee without assignment of said damages. *Answer :* That is refused. [6]

2. There being no evidence in the case of the condition or value of plaintiff's land prior to the erection and completion of defendant's line of telegraph in 1883, there is nothing before the jury on which they can base damages, and their verdict must be for the defendant. *Answer :* This is also refused. [7]

3. The defendant's line of telegraph having been erected and completed in or about the year 1883, no recovery can be had in this proceeding for damages alleged to have accrued subsequent to that date. *Answer :* This is also refused. [8]

5. The opinions of witness called by the plaintiff as to the amount of damages sustained by her are not proper proof of such damages and should be disregarded by the jury. *Answer :* That is refused. [9]

6. No market value of the plaintiff's property with the line of telegraph on it as compared with the market value of the property without the line of telegraph on it having been shown, the damages to be assessed, if any, must be confined to damage to the use of the property for the purposes for which it is ordinarily used. *Answer :* That is refused. [10]

7. In ascertaining the damage, if any, to the use of the property for the purposes for which it is ordinarily used, no speculative, remote or sentimental damages are to be given, but only such actual, tangible damages as are due to loss of use of the property, or any part thereof, for purposes for which it is ordinarily used. *Answer :* That point is refused. We say in connection with the point that no speculative, remote or sentimental damages should be given. We have already given you the basis upon which you should compute damages. They should be based entirely upon the extent, if any, to which this property has been lessened in its market value by reason of this telegraph line. [11]

8. The plaintiff not having shown any pecuniary loss by reason of the construction, operation and maintenance of the defendant's line of telegraph, only nominal damages, if any, can be recovered in this action. *Answer :* That is refused. [12]

10. The telegraph line in question having been constructed

on the highway only nominal damages, if any, can be recovered from the defendant in this case.   *Answer :*  That is refused. [13]

13. Under all the evidence in the case the verdict must be for the defendant.   *Answer :*  That point is refused. [14]

Verdict and judgment for plaintiff for $500.   Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions; (6–14) above instructions; quoting them; (15) that the verdict was excessive.

*Homer Greene* and *Rodney A. Mercur*, with them *W. W. Cook*, for appellant.—The vendee of land is not entitled to compensation for land taken or injured before he acquired title, for the reason that the claim for compensation is a personal claim entirely independent of the title to the land : McFadden v. Johnson, 72 Pa. 335 ; Zimmerman v. Union Canal Co., 1 W. & S. 346 ; Turnpike Road v. Brosi, 22 Pa. 29 ; Heilman v. Union Canal Co., 50 Pa. 268 ; Davis v. Titusville, etc., Ry. Co., 114 Pa. 308.

The damages should be assessed as of the time of the actual entry on the land : Blashfield v. Empire State Telephone, etc., Co., 147 N. Y. 520 (42 N. E. Repr. 2) ; Klages v. Phila. & Reading Terminal Co., 160 Pa. 386 ; D. L. & W. R. R. Co. v. Burson, 61 Pa. 369 ; Oliver v. Pittsburg, etc., Ry. Co., 131 Pa. 408 ; Justice v. Nesquehoning Valley R. R. Co., 87 Pa. 28 ; Lawrence's App., 78 Pa. 369 ; Graham v. Pittsburg, etc., R. R. Co., 145 Pa. 504 ; Meigs's App., 62 Pa. 28 ; Seattle, etc., R. R. Co. v. Corbett, 17 Am. & Eng. R. Cases (N. S.), 709.

Nominal damages can only be recovered by the owner of the fee where the telegraph line is constructed on the public highway : Eels v. American Telephone & Telegraph Co., 143 N. Y. 133 (38 N. E. Repr. 202) ; Postal Tel. Co. v. Bruen, 39 N. Y. Supp. 220 ; Blashfield v. Empire State Telephone, etc., Co., 147 N. Y. 520 (42 N. E. Repr. 2) ; Mut. Union Tel. Co. v. Katkamp, 103 Ill. 420 ; Phila & Erie R. R. Co. v. Cake, 95 Pa. 139.

*E. C. Mumford*, with him *Charles A. McCarthy* and *William H. Lee*, for appellee.

OPINION BY MORRISON, J., March 12, 1903:

This is an appeal by the Postal Telegraph Company from the judgment of the court of common pleas of Wayne county at No. 65, May term, 1901. The proceeding was instituted on April 8, 1891, by the appellant presenting its petition asking for the appointment of a jury of view to assess the damages done or likely to be done to or sustained by Mary E. Shevalier et al., by reason of the location and construction of its line of electric telegraph along and upon the public road, passing through the lands of the said Mary E. Shevalier. The petition presented by the appellant set out that their telegraph line passes along and upon the public highway adjoining the lands of and, in the cases hereinafter mentioned, across the lands of George Roberts, Mary E. Shevalier, William Guinnip, M. Calkins, William Huber, Moses Dexter, Thomas Dexter and C. N. Decker and Martha Decker, his wife, life tenants, and Floyd Decker and Mortimer Decker, Grace Decker, Cornelius Decker and Elizabeth Decker Toms, children of the said C. N. Decker and Martha Decker, remainder-men in fee, owners or reputed owners of the said lands in the township of Damascus. The petition referred to the lands of six several persons who were made plaintiffs in as many actions against the appellant. All of these cases were put at issue and tried in the court of common pleas of Wayne county, and verdicts and judgments recovered in favor of the landowners. The cases are appealed to Nos. 26, 27, 28, 29, 30 and 31, January term, 1903, and were all argued together, and this opinion applies to all of them. The record shows that the first steps taken by the appellant for the condemnation of its right of way and the assessment of the damages was by the filing of a bond in favor of each landowner on February 2, 1901, and this was followed by the petition mentioned on April 8, 1901. The appellant appealed from the reports of viewers and issues were framed and jury trials had in each case. The appellant actually constructed its telegraph line through the lands of the several plaintiffs in 1883, without making compensation or tendering the same and without filing any bond or security to any of the landowners for the damages caused or to be caused by the location of the telegraph line. It thus appears that from 1883, until February 2, 1901, the appellant was a trespasser pure and simple as against

the landowners through whose lands their line was located. In most of these cases it appears that the appellees acquired their titles to the lands subsequent to 1883, when the telegraph line was located thereon. In perhaps two of the cases it appears that the appellees owned a portion of the land which constitutes their farms, in 1883 when the telegraph line was erected, but as to other portions of their land the title thereto was acquired some years after the erection of the telegraph line thereon. In the other cases the present appellees were not owners of the land when the telegraph line was constructed through the same.

It does not appear that any action or actions were ever begun by anybody against the appellant for the recovery of damages for the construction of the telegraph line through these lands prior to the commencement of these suits by the petitions filed by the appellant. It is not pretended that any assignment or transfer of the claims for damages caused by the unlawful entry upon the lands by the appellant were ever made to the appellees or anybody else. Article 16 section 8 of the constitution declares " municipal and other corporations and individuals, invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction." In Gilmore v. Pittsburg, Virginia & Charleston R. R. Co., 104 Pa. 275, it was said by the Supreme Court in an opinion by MERCUR, C. J., on page 280: " Until actual payment of the damages, or security given for their payment when ascertained, the corporation has no right to construct or enlarge its works on private property, nor to injure or destroy the same. By so doing before payment made or security therefor given, it becomes a trespasser ; and an action of trespass will lie against the party entering on the land, although the security be afterward given ; . . . . or if permanent possession by the laying of rails be thus illegally taken, the owner of the land can maintain ejectment to recover possession thereof." This case is cited and recognized in Williamsport, etc., R. Co. v. Phila., etc., R. Co., 141 Pa. 407. On page 415 of this case it is said : " The title of the owner is not divested until the last of these steps has been taken, i. e.,

payment to the owner for what is taken and the consequences of the taking or security that it shall be made when the amount due him is legally ascertained." The learned counsel for the appellant have argued ably and contended strongly that because of their entry upon the land in 1883, and the continued ·occupancy of the same by their telegraph line down to April 8, 1891, when they commenced proceedings to have the damages assessed, and because the plaintiffs in the several issues did not own the lands in 1883, therefore, they are not in a legal position to recover the damages caused by the original entry and construction of the telegraph line in 1883, and that they are not in a position to recover any damages caused by any subsequent action of the appellant, disclosed by the evidence in these cases. The learned court below tried the cases on the theory that no permanent servitude was imposed upon the lands of the appellees until the appellant began legal steps on February 2, 1901, to have the damages assessed, and to impose permanent servitude upon the lands; that all that was done prior to the latter date was in its nature a trespass of a temporary nature, and that the persons who were injured thereby may have had their right of action to recover damages for the same, but that such damages cannot be recovered by the present appellees, in other words, the learned court held that the plaintiffs below being the persons who owned the lands on February 2, 1901, the time when the greatest damage was inflicted, by the appellant commencing proceedings to impose a permanent servitude upon the lands, are the persons legally entitled to recover the damages for said permanent servitude. If this is a correct interpretation of the law, then we think it must be conceded that the cases were correctly tried upon the main questions raised and argued in these appeals. The learned counsel contend vigorously, in effect, that the appellant by its wrongful and tortious act begun in 1883, and continued down until February 2, 1901, could by then going into court and commencing proceedings to condemn the right of way across the lands of the appellees, have the proceedings relate back to 1883, and fix the damages as of that date, and that such damages must go to the then landowners. In support of this doctrine, the learned counsel have cited many cases, some of which at first blush seem to sustain their position. The long line of cases upon this question do not seem to be in

entire harmony, but we are inclined to the opinion that the difficulty is more apparent than real.   We think the apparent contradictions of the cases grow more out of what was said than what was decided.   If the parties who owned the lands at the time the appellant commenced proceedings according to law to impose the servitude upon them cannot collect the damages accruing from the date of the commencement of such proceeding, then we think there is something wrong with the law, or rather with its interpretation.   To hold otherwise is to give the appellant the benefit of its own wrong in unlawfully entering upon these lands in 1883, and continuing thereon as a trespasser for many years.   But as we understand the doctrine of the cases, the damages are to be assessed from the time when the greatest injury was imposed upon the lands of the appellees.   And that this was when the appellant first indicated, by lawful proceedings, its intention to impose a permanent servitude seems too clear to require argument.

In Heilman v. Union Canal Co., 50 Pa. 268, the doctrine we have stated or very near it was held by the Supreme Court.   In that case the company had enjoyed the right to take water by arrangement with several prior owners, but in 1857 they first made a permanent appropriation of the water without a purchase.   At that time Heilman was the owner.   It is for that appropriation the proceedings were awarded, and Judge STRONG said on page 275: " In our opinion it was rightly awarded, for down to 1857 there had been no appropriation under the power granted by the commonwealth, and, for injury done since, there had been no compensation paid, or secured to be paid by contract.   Had the company in 1834 bought a right to use the water for twenty-three years and no longer, it could not be doubted that continuing to use it after the expiration of the term, without an extension of the contract, would be an injury to the person who was the owner when the unauthorized use began, and that then an assessment of damages became his right.   Such is in substance the present case.   Heilman was the owner when the water was appropriated, within the meaning of the act of assembly."

In McClinton v. Pittsburg, Fort Wayne & Chicago Railway Co., 66 Pa. 404, the Supreme Court in an opinion by AGNEW, J., said on page 409: " The owner's right to damages for trespass

is a vested right of which he cannot be deprived, but as to that use which is yet to come, the legal remedy for appropriation and compensation may be exercised by either party. The court erred, therefore, in quashing the petition. The petition properly used, is not for the recovery of past damages under an unlawful entry, but for compensation for a right to be invested in the company. Though the latter is often denominated damages, its subject is essentially different from the former. It is called damages only in the sense of an unliquidated demand, but in its nature it is the price of a purchased privilege. On the contrary the claim for the tortious entry and illegal user of the land is purely and properly damages." That case is cited and approved in Keller v. Harrisburg, etc., Railroad Company, 151 Pa. 67. In the opinion of the Supreme Court by Mr. Justice STERRETT, it clearly appears that the company entered upon the plaintiff's land for railroad purposes and tendered him a bond with sureties, which he accepted, and it is upon this statement of facts that the learned judge says its entry upon and subsequent occupation of the land was, therefore, lawful, as was said in Hoffman's Appeal, 118 Pa. 512, the company acquired as clear and perfect right to the easement as if it had paid therefor in cash. These cases and many others that might be cited appear to establish the rule that where the corporation enters upon the property for the purpose of condemning it and promptly tenders or files a bond that their occupation becomes lawful, and in the assessment of damages the inquiry relates back to the time of the entry. But this is not our case. We have seen that the corporation appellant entered upon the lands tortiously and held possession thereof for about eight years as a trespasser, and then filed a bond and petition to have the damages assessed with a view to imposing a permanent servitude upon the premises. And when it instituted the proceedings to have the damages assessed, the persons who owned the property in 1883 had parted with their titles, and in our opinion under the peculiar facts of the cases under consideration it would be contrary to the principles of justice, as well as the doctrine of the adjudicated cases, to hold that the damages must be assessed as of the date of 1883, in favor of the then owners of the lands. In Graham v. Pittsburg, etc., R. R. Co., 145 Pa. 504, Mr. Justice CLARK on page 513 says: " The

subsequent maintenance of the road thereon was, therefore, a continuing trespass until the right of way vested in the company on the approval of their bond on December 3, 1890.

For redress of the injuries resulting from this invasion of the plaintiff's rights, he had, of course, his remedy by an action of trespass; citing several authorities. The effect of the subsequent statutory proceeding to assess damages was to divest the title as of the date of filing the bond. In the action of trespass, if one had been brought, the plaintiff would have been entitled to recover damages for the tortious entry, and for any injuries he suffered from that date until the title of the right of way was vested in the company, not as these injuries affected the value of the land, but the enjoyment of it; whereas, in the proceeding to assess damages under the statute, the measure of damages would be computed upon the value of the land, unaffected by the obstruction of the plaintiff's road, and its value as affected by it. The action of trespass is for the recovery of the damages accrued in the past, whilst the assessment under the statute is for the price of a permanent right or privilege to be enjoyed in the future; but that price must be settled upon a consideration of the value of the land at the time of its lawful appropriation, as it was or in the condition it was before the railroad was constructed, and its value afterwards."

The learned judge then argues that although the damages are to be computed as of the date of the divesture of the plaintiff's title to the right of way, yet it is plain that the land must be valued in the first instance, free from the obstructions of the plaintiff's road, and in the condition in which the defendant company found it upon their first entry. From the latter doctrine in this and kindred cases the learned counsel for the appellant argues that the court erred in excluding their offers of testimony as to the condition of the appellee's lands at the time of the original tortious entry by the telegraph company. Indeed they argue that the inquiry was confined to this time. The latter is clearly erroneous, but it must be conceded that in the case of the construction of a railroad, the doctrine of this case does hold that evidence as to the condition of the land at the time of the wrongful entry was competent. But we think a wide difference exists between the case the learned

judge was discussing and those at bar. In the construction of a railroad it is usual to make cuts and fills, culverts and bridges, and to change the physical condition of the land very materially, hence the necessity for the witnesses to have been familiar with the condition of the land before the railroad was constructed. But in the case of a telegraph line no physical change whatever is made in the land. The posts are set and wires strung and guy wires carried out and fastened to some object, and a person can go and view the premises after the construction of the telegraph line and he will be just as competent to say what the condition of the land was before the line was constructed as if he had been there at the time of the original entry. For this reason and others that might be suggested, among them the long lapse of time from the original entry until the trial, we are disposed to distinguish these cases from Graham v. R. R. Co., and to hold that the learned judge was right in limiting the evidence to an inquiry as to the condition of the lands at the time the appellant filed its bond, and indicated its purpose of imposing a permanent servitude upon the lands. This view of the matter we think is supported by reason, and it is as favorable to the appellant as it had any right to demand. We cannot agree with the learned counsel for the appellant that farmers residing in the vicinity were not competent to go upon these lands after the construction of the telegraph line, and then give their opinion as to the value of the land immediately before the filing of the petitions, unaffected by the telegraph line, and immediately after as affected thereby.

The learned court below in disposing of a motion for a new trial in one of the cases said: "The rule which seems to us to be deducible from the cases is this: where the entry is not tortious, or where under a tortious entry the occupancy has become lawful by agreement of the parties or otherwise, before conveyance of the landowner, the damages belong to him and do not pass to his vendee, and should be assessed as of the date of the original entry. But where the entry and occupation are unlawful, and no steps have been taken to fix the damages for permanent occupancy, the grantee, in possession, of the person who owned the land at the time of the unlawful entry is entitled to the damages from the inception of

his title ; damages for the unlawful occupancy and compensation for the purchased privilege to remain permanently, each to be settled in a separate proceeding." In the present cases it is not shown, or claimed that any agreement or understanding was ever had with the owner regarding the entry or use by the appellant of the lands in question, and it should also be remembered that these suits were instituted by petition of the appellant in which the several plaintiffs are named as the parties owning the premises, thus in effect conceding that the damages for the permanent easement belong to them. We think by this proceeding the appellant, in effect, conceded to the plaintiffs the title to the property and also the right to the damages for the permanent easement.

Another question raised by the assignments of error is that in any event the plaintiffs below were only entitled to nominal damages for the reason that the telegraph line was constructed along the highway. If there had been no evidence except a concession of the ownership of the land by the plaintiffs, and that the telegraph line was constructed in the highway, we think this would have been the correct rule, but in these cases a large number of witnesses were sworn who testified to the value of the land unaffected by the telegraph line and as affected by it, and the amount of damages fixed by the jury is within this testimony. Such being the case, it would have been error for the court to have limited the recovery to nominal damages.

The fifth assignment of error is as follows : " If he is entitled to recover, he would be entitled to recover as of that date, the first of February last; to that should be added interest, not as damages, but by way of compensation to him down to this, finding a verdict for the whole sum." It must be held that this instruction, which in substance was given in each case, is a technical error. The jury should have been instructed that they might add such sum to the damages as in their judgment would compensate for the delay in paying it, not to exceed legal interest, and that it might be as much less as they saw fit to make it. The vice of the above instruction was to give the jury a binding instruction to add legal interest to the sum of the unliquidated damages which they should fix by their verdict: Richards v. Citizens' Natural Gas Co., 130 Pa. 37. This

case was quoted with approval in Ball Club, Limited, v. Phila., 192 Pa. 632. On page 650 Mr. Justice Green, speaking for the court, said : " Interest is recoverable of right, but compensation for deferred payments in torts depends on the circumstances of each case." It must be conceded that this rule is very technical, and that its results are probably very insignificant. Probably in ninety-nine cases out of one hundred, with perfectly legal instructions to a jury as to interest, where the cause of action is unliquidated damages, they will go out and fix the damages and add legal interest thereto and bring in a verdict for the amount. But nevertheless it is the law that juries should be instructed so that they will not feel bound or even justified in adding legal interest in such cases, unless there is something in the particular case which would justify their going to that extent. At the argument of these cases the learned counsel for the appellees stated that he would file in each case a statement showing the amount of interest included in each verdict and his consent in the event of the affirmance of the judgments that they should be modified by the deduction of the interest and judgment affirmed for the balance, and in affirming these judgments we will adopt that method. The assignments of error are all overruled except the one in regard to interest, which is sustained to the extent of striking off the interest : Richards v. Citizens' Natural Gas Co., supra.

Judgment reduced nunc pro tunc, as of December 7, 1901, to $464.25, and thereupon judgment affirmed.