Cochran Coal Company, Appellant, *v.* Municipal Management Company.

Argued September 30, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Fred B. Trescher,* with him *Howard M. Whitehead,* for appellant.

*Robert W. Smith,* with him *Ernest R. Von Starck, Morgan, Lewis & Bockius, John G. Gaut,* and *Smith, Best & Horn,* for appellees.

OPINION BY MR. JUSTICE JONES, January 7, 1955:

The plaintiff company sought by this action of trespass to recover damages for the occupation by the defendants of a substantial part of its coal lands and mining rights in Westmoreland County, Pennsylvania. The court en banc sustained preliminary objections to the complaint and entered judgment for the defendants. This appeal by the plaintiff followed. The basic legal question involved is whether the injuries to the plaintiff's property allegedly inflicted by the defendants may be redressed in an action of trespass or whether the

appropriate remedy is a viewers' proceeding for the ascertainment of the damages.

The plaintiff, Cochran Coal Company, is a private corporation organized and existing under the laws of Pennsylvania with its principal office in Salina, Westmoreland County. It was incorporated for the purpose of engaging in the mining and removal of coal; and, in connection with its operations, it acquired "mines and large blocks of coal in Bell and Washington Townships, Westmoreland County, . . . including the right to mine and remove said coal without any obligation to support the surface, and including the right to use the surface above said coal for the purpose of mining and removing said coal, . . . of digging, testing, drilling and exploring for said coal, . . . of ventilating said mines, and . . . of constructing manway shafts and entries or exits."

The defendant Municipal Authority of Westmoreland County is a public corporation organized under the Pennsylvania Municipality Authorities Act of 1945, P.L. 382, 53 PS § 2900z-1 et seq., for the purpose of acquiring and operating a water distribution system to serve consumers in Westmoreland County, maintaining its office in Greensburg. The Municipal Management Company, the other defendant, is a private corporation organized and existing under the laws of Pennsylvania; it likewise maintains its office in Greensburg.

On July 1, 1950, the Authority entered into a contract with the Management Company whereby the latter, for a fee of 7½% of the gross revenues of the Authority, agreed to manage the waterworks system of the Authority for a period of forty years and further agreed "to construct or acquire a dam on Beaver Run in Bell and Washington Townships, Westmoreland County, . . . and to construct a filtration and pumping

plant at or near said dam, and to install pipe lines to transmit water from said dam and filtration plant to the several points in Westmoreland County . . . supplied by Authority."

In its complaint, the Coal Company alleged that Authority and Management had "constructed a dam known as Beaver Run Dam, together with filtration plant and pipe lines on lands over and above large areas of coal owned by the plaintiff, and on lands in which the plaintiff has the right to use the surface for the purposes aforesaid, and caused said dam to be filled with water, and [are] presently maintaining said dam and [propose] to continue to maintain said dam, and the defendants thereby, with force and arms, broke and entered the close of the plaintiff." The complaint further averred that "water from said dam has escaped through the fissures and underground crevices or openings into the mine of the plaintiff" and that "plaintiff has been and will in the future be permanently deprived of the use of the coal under said dam and within a distance of two hundred fifty feet therefrom, and has and will in the future be deprived of the right to use the surface occupied by said dam, and has been permanently denied access to large blocks of coal. . . ." For these injuries, the Coal Company demanded $750,-000 in damages.

By Section 11 of the Municipality Authorities Act of 1945, P.L. 382, as amended, 53 PS § 2900z-12, the Authority is invested with power of eminent domain for the acquisition of such interests in land as may be necessary for its operation. Accordingly, both Authority and Management contend that since there exists in Authority a statutory right of eminent domain, the Coal Company's sole remedy for its alleged injuries is by way of a board of view, citing as authority our re-

cent pronouncement in *Hastings Appeal,* 374 Pa. 120, 97 A. 2d 11. The argument is untenable.

Of course, the Authority possesses the power of eminent domain, but it has never attempted to exercise that power in respect of the Coal Company's property. No resolution of condemnation has been adopted; there has been no effort to make compensation; and no bond has been posted to secure the owner for the damages suffered. Indeed, even now, the defendants stoutly maintain that there has been no taking of the plaintiff's property. The rule is clear, however, that a public or private corporation, although invested with the power of eminent domain, is a trespasser when it undertakes to appropriate private property without adopting the requisite condemnation resolution and making or at least tendering compensation or posting a bond. "Where the power to take exists, it must be exercised according to law": *Lord v. Meadville Water Co.,* 135 Pa. 122, 131, 19 A. 1007.

It would be hard to imagine a more striking example of an appropriation of private property to other than the owner's use than what this record discloses. As the complaint alleges, the defendants, by the construction and maintenance of the Beaver Run Dam, willfully deprived the Coal Company of the use of its coal underlying the dam, of the enjoyment of its surface rights on land where the dam is situated and of the advantageous operation of its mines into which the dammed-up water seeps. Yet, in spite of these averments of the complaint, the Authority and Management Company bluntly assert that "there has been no actual interference with the plaintiff's possession of its coal underlying the surface, and the alleged future interference with the plaintiff's surface rights not yet exercised does not constitute a trespass. Accordingly, it is obvious that the defendant Authority has not *taken*

any of the property belonging to the plaintiff." But, the plaintiff makes no contention that there has been a taking of its property by the defendants in the sense that they have seized actual physical possession of the coal and mining rights for their own use and enjoyment. On the contrary, the trespass here consists not in the defendants' acquisition and use of the Coal Company's property but in their deprivation of the Coal Company's use and enjoyment of its property—virtually a taking. Where the owner has been effectively deprived of the lawful use of its property by the act of another, there has been no less a taking. As Mr. Chief Justice PAXSON said in the *Lord* case, supra,—"A taking without compensation is a trespass; as much so as the taking of land by a railroad company to construct its road without making compensation or filing a bond with security, as provided by law."

In *Shevalier v. Postal Telegraph Company*, 22 Pa. Superior Ct. 506, the defendant company, which was invested with the power of eminent domain, constructed a telegraph line through lands of the plaintiff and others in *1883* "without making compensation or tendering the same and without filing any bond or security to any of the landowners for the damages caused or to be caused by the location of the telegraph line." In *1901*, the company filed bonds in favor of the landowners and petitioned for the court appointment of a board of view to assess the damages occasioned by its pro tanto occupation of the properties. The court held that the damages in the viewers proceeding were to be assessed as of the date of the formal taking, viz., 1901, when the bonds to secure damages were filed. The Superior Court, after noting that from 1883 until 1901 the defendant company "was a trespasser pure and simple as against the landowners through whose lands [the] line was located", further pointed out that an

action in trespass would lie for the damages resulting from the tortious entry in 1883 until the actual condemnation in 1901. Quoting from Mr. Chief Justice MERCUR'S opinion in *Gilmore v. Pittsburgh, Virginia, and Charleston R. R. Co.,* 104 Pa. 275, 280, the court stated,—"Until actual payment of the damages, or security given for their payment when ascertained, the corporation has no right to construct or enlarge its works on private property, nor to injure or destroy the same. By so doing before payment made or security therefor given, it becomes a trespasser; and an action of trespass will lie against the party entering on the land, although the security be afterward given. . ." The rationale of the ruling in the *Shevalier* case is succinctly summarized in the first headnote to that case where it is said that "For the trespass up to the time of filing the petition, the owner has his remedy at law. For the injury caused by the imposition of the permanent servitude, he has his remedy in the proceedings before the viewers."

In *Keil v. Chartiers V. Gas Co.,* 131 Pa. 466, 19 A. 78, the defendant corporation, which likewise was invested with the power of eminent domain, erroneously laid a gas line across a part of the plaintiff's property. When the mistake was discovered, the corporation tendered a bond and sought to condemn the land occupied by the pipe line. The owner, however, instituted an action in trespass for the breaking of his close. This court there said,—"The entry, having been made without payment of the damages, or the offer of security therefor, was unauthorized, and trespass will lie to recover for the breach of the close. The subsequent tender of a bond, and proceedings for the condemnation of the land, do not divest the right of action for the trespass, although they transfer the adjustment of the damages necessarily consequent upon the entry

under the right of eminent domain from the common law action to the statutory proceeding. The right to sue, however, vested at the commission of the trespass [citing case], and damages for the breach of the close, and for any deprivation of use, or other injury sustained prior to the tender of the bond, are recoverable in this action. But for the permanent injury by reason of the appropriation of part of [the] lot, and the effect of such appropriation on the remainder, the damages are secured by the bond, and will be assessed in the proceeding instituted for that purpose, and now pending." Unlike the situation in the *Keil* case, however, no condemnation proceeding is now pending for the assessment of damages due the Coal Company for the intrusion upon its property. But, even if there were, the right to sue vested at the commission of the trespass and that is all that is here involved.

The defendants seek to distinguish the *Shevalier* and *Keil* cases by stressing the fact that in each of them there was an actual taking or occupation of land whereas in the instant case there has been no entry upon the Coal Company's land and no interference with incorporeal hereditaments giving rise to an action in trespass at common law. The defendants argue that the injuries to the plaintiff's property were remediable by trespass on the case while the instant case is founded on the theory of a trespass *quare clausam fregit*. True enough, the complaint alleges that the defendants had broken the plaintiff's close. But, the technical distinction between common law trespass and trespass on the case is of no material significance here. The defendants were well aware from the averments of the complaint that the plaintiff was demanding damages for injuries to its property resulting from the construction and operation of the Beaver Run Dam. Moreover, the fact remains that the plaintiff has been

deprived of its coal underlying the dam site, of the enjoyment of its surface rights and of the use of its mines into which the congregated waters of the dam seep. The plaintiff's mines have been entered by water seepage; its coal in place and its surface rights have been preempted by the construction of the dam.

Nor is the defendants' contention supported by our decision in *Hastings Appeal,* supra. In that case the City of Philadelphia, acting by its Director of Public Works, undertook the reconstruction of a sewer line in a public street. Through no negligence of the City or its contractors, the reconstruction work, during which blasting was resorted to, caused a subsidence of the plaintiff's abutting property and a consequent "loosening, cracking and dislocation" of the building erected thereon. There was no *taking* of the plaintiff's property. On petition by the owner to the Court of Common Pleas, a board of view was constituted to assess the damages to the plaintiff's property. But, subsequently, the court vacated the appointment of viewers on a rule to show cause obtained by the City. On appeal, we reversed, thus reinstating the board of view. In determining that the injuries to the plaintiff's property were properly compensable in the statutory proceeding, we traced the development of the liability of municipal and other corporations for private property taken, injured or destroyed through nontortious conduct in the construction or enlargement of public works, highways or improvements. We concluded that, where private property is taken, injured or destroyed by the *non-tortious* conduct of one invested with the power of eminent domain, the owner's only avenue of redress is by way of a board of view; but, where there is tortious conduct (as is here alleged), the owner may proceed at law for damages accruing until the trespasser exercises its power of eminent domain.

The condemnation does not, however, divest the right of action for the trespass; it merely transfers to the statutory proceeding the adjustment of the damages for the permanent taking: see *Keil v. Chartiers V. Gas Co.* and *Shevalier v. Postal Telegraph Company,* supra.

On the basis of *Penn Gas Coal Co. v. Versailles Fuel Gas Co.,* 131 Pa. 522, 19 A. 933, the defendants contend that when the Authority acquired the land on which its dam is located, it also acquired the underlying coal so that the defendants cannot be said to be trespassers in or on the Coal Company's property. This contention is based on the doctrine expressed in the *Versailles* case that, where land is acquired for public purposes *by condemnation,* there is not only an acquisition of the surface rights but also so much of the subsurface rights (whether severed or not) as are required for the support of the surface. Otherwise, the taking merely of the surface without adequate subjacent support would often prove to be a worthless acquisition. This argument is not presently germane. While it does not appear of record how the Authority actually obtained the surface land on which its dam is located, it freely admits that the land was acquired by purchase. The private purchase of surface rights, often without the knowledge of the owner of the underlying coal, differs significantly from a public condemnation of property wherein the owner of the subsurface would be free to intervene for the protection of his interests. And, it is a particularly notable fact in the instant case that the defendants have taken no steps to compensate or secure the Coal Company for the damages to its property allegedly caused by the construction and maintenance of the dam.

In our view, an action of trespass lies against the defendants for their encroachments on the plaintiff's property even though the Authority is invested with

the power of eminent domain. It becomes unnecessary, therefore, to discuss or consider the further contention of the Coal Company that, because of the Authority's contract with the private Management Company, it has forfeited its right to exercise its power of eminent domain in respect of the plaintiff's property.

Finally, the Management Company contends that the plaintiff has failed to state a cause of action against it inasmuch as it acted at the direction of and for the Authority whose entry was allegedly not tortious but lawful. However, the complaint avers joint action on the part of the two defendants; and, taking the plaintiff's further averments as true, the Authority's conduct in respect of the plaintiff's property was tortious and, consequently, the Management Company's conduct was equally so.

The judgment is reversed with a procedendo.