J-A16021-14

2014 PA Super 164

| PENNSYLVANIA SERVICES | : | IN THE SUPERIOR COURT OF |
| CORPORATION,TRADING AS EMERALD | : | PENNSYLVANIA |
| COAL RESOURCES, LP, AND | : | |
| PENNSYLVANIA LAND HOLDINGS | : | |
| COMPANY, LLC, | : | |
| Appellees | : | |
| | : | |
| v. | : | |
| | : | |
| TEXAS EASTERN TRANSMISSION, LP, | : | |
| | : | |
| Appellant | : | No. 1429 WDA 2013 |

Appeal from the Order entered on August 9, 2013
in the Court of Common Pleas of Greene County,
Civil Division, No. AD 663 of 2011

BEFORE:  DONOHUE, OTT and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.:                                    **FILED JULY 29, 2014**

Texas Eastern Transmission, LP ("Texas Eastern") appeals from the

Order granting partial summary judgment against it and in favor of

Pennsylvania Services Corporation, trading as Emerald Coal Resources, LP,

and Pennsylvania Land Holdings Company, LLC (collectively, "Emerald"), and

declaring the parties' rights as to the support estate underlying gas

transmission pipelines owned by Texas Eastern.[1]  We affirm.

Emerald operates a full extraction coal mine in Greene County,

Pennsylvania. Texas Eastern operates five interstate pipelines, which

---

[1] An order declaring the rights of parties is immediately appealable pursuant
to 42 Pa.C.S.A. § 7532.  Because the trial court's Order declared the rights
of the parties as to subjacent support, we deny the Motion to Quash the
appeal filed by Emerald.

traverse property above Emerald's mine. Four of the five Pipelines are active, and all are buried several feet below the surface.

The Pennsylvania Department of Environmental Protection ("the Department"), in 2010, issued a permit ("Permit") authorizing Emerald to conduct full extraction mining operations, by longwall system,[2] in an area of the mine known as "D District." The Permit included the following condition:

> [A]t least 90 days prior to conducting any underground mining that will or is likely to result in subsidence of the Pipelines, [Emerald] shall submit evidence to the Department showing that [Emerald] reached an agreement with [Texas Eastern] or provide other satisfactory evidence (for example, a court or administrative order or ruling) that requires the performance, prior to undermining of appropriate mitigation measures that will minimize damage, disruption or destruction of utility service provided by the Pipelines after they have been undermined, which describes those mitigation measures.

Complaint, Exhibit A. Emerald and Texas Eastern were unable to reach an agreement regarding mitigation measures.

On July 14, 2011, Emerald filed a five-count Complaint against Texas Eastern, seeking declaratory relief. Emerald averred that it could not fully extract its coal underlying Texas Eastern's Pipelines, by longwall system,

---

[2] "Longwall system" is defined as "a method of coal mining in which the working face extends entirely across the seam, the work proceeds either away from or toward the main shaft, and the roof is allowed to cave in behind the workers." **People United to Save Homes v. Dep't of Envtl. Prot.**, 789 A.2d 319, 323 (Pa. Cmwlth. 2001) (quoting Webster's Third New International Dictionary 1334 (1993)); **see also McCray v. Pa. Dep't of Corr.**, 872 A.2d 1127, 1130 n.12 (Pa. 2005) (recognizing that "[a]lthough the Superior Court and the Commonwealth Court "each is bound to give due consideration to the decisions and reasoning of the other, neither is bound to follow as controlling precedent the decisions of the other").

unless, before undermining begins, Texas Eastern plans for, implements and pays for appropriate mitigation measures that will minimize damage, disruption, or destruction of [the Pipelines] from subsidence that may occur from full extraction mining by Emerald.

Complaint, ¶ 3. Emerald claimed that Texas Eastern interfered with Emerald's superior property rights by its refusal to plan for, implement and pay for appropriate mitigation measures. Complaint, ¶ 5. Emerald's Complaint sought a declaration recognizing its superior property rights, and interference of those rights by Texas Eastern's inaction. Complaint, ¶¶ 74-79. Emerald also sought injunctive relief

(1) stopping Texas Eastern from interfering with Emerald's superior property rights; (2) mandating that Texas Eastern plan for, implement, and pay for appropriate and timely mitigation measures to permit Emerald to mine all of its coal under the Pipelines in D District; and (3) awarding any other appropriate relief.

Complaint, at p. 16. Emerald pled additional counts sounding in trespass (Count IV) and private nuisance (Count V).

On August 19, 2011, Texas Eastern removed the case to federal court on the ground that the "complete preemption doctrine" confers federal-question jurisdiction.[3] The federal court disagreed, holding that

Texas Eastern has not shown that (i) Congress intended to preempt the Pennsylvania laws at issue in this case, (ii) there is a conflict between Pennsylvania law and [federal law] such that compliance with both is impossible or would prevent the accomplishment of congressional objectives, or (iii) that

---

[3] Texas Eastern claimed that two federal statutes completely preempted Emerald's claims — the Natural Gas Pipeline Safety Act, 49 U.S.C.A. §§ 60101 *et seq.*, and the Natural Gas Act, 15 U.S.C.A. §§ 717 *et seq.*

- 3 -

> Congress legislated comprehensively to occupy an entire field of regulations, leaving no room for the Pennsylvania laws at issue….

***Pa. Servs. Corp. v. Tex. E. Transmission, LP***, 2011 U.S. Dist. LEXIS 117559, at *3-*4 (W.D. Pa. 2011). On that basis, the federal court remanded to the Court of Common Pleas of Greene County for disposition of the matter under Pennsylvania law. ***Id.*** at *4.

Before the common pleas court, Texas Eastern filed Preliminary Objections to Emerald's Complaint, which the trial court denied. Trial Court Order, 1/10/12. Thereafter, Texas Eastern filed its Answer, New Matter and Counterclaims. Texas Eastern's counterclaims sought declaratory and injunctive relief. Texas Eastern averred that the Pipelines were constructed prior to 1967; the predecessors of Emerald knew or had reason to know of the Pipelines above their coal estates; and the Pipelines would be materially damaged as a result of Emerald's intended mining. Counterclaims, ¶¶ 17, 19. Texas claimed that the right of Emerald (and its predecessors) to seek just compensation for the coal estates in D District accrued not later than when the Pipelines were constructed, and the statute of limitations for any such action has expired. ***Id.***, ¶¶ 23-24. Texas Eastern further claimed that the waivers of support, relied upon by Emerald, do not permit the removal of subjacent support for the Pipelines through the type of mining planned by Emerald. ***Id.***, ¶ 29. Texas Eastern claimed ownership of the right to subjacent support of the Pipelines; that it had acquired the right to

subjacent support by means of a *de facto* taking or through adverse possession/prescriptive easement; and that Emerald was liable to Texas Eastern for trespass, negligence and unjust enrichment. *Id.*, ¶¶ 33-70.

Emerald filed a Motion for Preliminary Injunction on May 17, 2013. Emerald sought injunctive relief requiring Texas Eastern to plan and complete mitigation measures, and to pay for those measures. After the close of discovery, Emerald filed a Motion for Partial Summary Judgment in its declaratory judgment action, seeking a declaration that Emerald owns the coal estate, support estate and mining rights underlying the surface of D District by way of deeds severing the coal estate ("Coal Severance Deeds") executed in the early 1900s. Texas Eastern filed its own Motion for Partial Summary Judgment seeking declaratory relief, claiming ownership of the support estate by deed, inverse condemnation (a *de facto* taking) and/or adverse possession.

After a hearing, the trial court entered an Order granting Emerald's Motion for Partial Summary Judgment, denying Texas Eastern's Motion for Partial Summary Judgment, and declaring the rights of the parties as to the mining of coal under the Pipelines. Thereafter, Texas Eastern filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

Texas Eastern now presents the following claims for our review:

> Whether, by granting partial summary judgment and entering declaratory judgment in favor of Emerald as opposed to Texas

Eastern with regard to ownership and control of the subjacent support for the Pipelines, the [trial court] erred by determining that:

(a) The deeds that Emerald cites as establishing its right to remove the subjacent support for the Pipelines actually convey that right to it[?]

(b) Texas Eastern's predecessor in interest, the United States, did not (*de facto*) acquire the right to subjacent support for the Pipeline known as Line 2 when, in the 1940s, it constructed that Pipeline across the underlying coal reserves that, at the time, were owned by Emerald's predecessor in interest[?]

(c) Texas Eastern has not, by adverse possession, otherwise acquired the right to subjacent support for the Pipelines[?]

Brief for Appellant at 5-6 (issues renumbered).

Initially, we observe our standard of review:

Our scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. ... Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the [fact-finder]. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

***DeArmitt v. New York Life Ins. Co.***, 73 A.3d 578, 585-86 (Pa. Super. 2013) (citations and quotation marks omitted).

Texas Eastern first claims that

even if common law principles regarding the meaning and functionality of deeds alone govern the question of who owns and controls the subjacent support for the Pipelines …, Emerald did not establish that, under these principles, it has the right to remove the support for the Pipelines throughout the entire D District.

Brief for Appellant at 29. Texas Eastern claims that the conveyance of coal in a deed does not necessary amount to a waiver of the right to subjacent support by the grantor. ***Id.*** at 30-31. Citing ***Penman v. Jones***, 100 A. 1043 (Pa. 1917), Texas Eastern asserts that the conveyance of "all the estate, right title, interest, benefit, property, claim and demand whatsoever," does not constitute a conveyance of the right to subjacent support. Brief for Appellant at 31. According to Texas Eastern, the deeds in Emerald's chain of title did not waive the right of subjacent support for the surface overlying D District. ***Id.***

Pennsylvania recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support. ***Hetrick v. Apollo Gas Co.***, 608 A.2d 1074, 1077 (Pa. Super. 1992). Because these estates are severable, different owners may hold title to separate and distinct estates in the same land. ***Id.*** "Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate." ***Smith***

*v. Glen Alden Coal Co.*, 32 A.2d 227, 235 (Pa. 1943). However, this servitude of subjacent support is a separate estate in land, and is sometimes referred to as the "third" estate. *Id.* While "[i]t is well established under Pennsylvania law that it is the owner of the surface land who has the proprietary right to support of the surface[,] . . . [i]t is equally well settled that this right may be waived either expressly or by implication."[4] *Consolidation Coal Co. v. White*, 875 A.2d 318, 327 (Pa. Super. 2005). Thus, we look to the deeds in the parties' chains of title to ascertain whether the right to support of the surface has been waived.

When construing a deed,

a court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it…. To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Id.* at 326-27 (citations omitted).

---

[4] In *Glen Alden Coal*, the Supreme Court concluded that when the testator, in 1879, leased "all coal upon and under" his tract of land, "he did not divest himself of his 'third estate' in that tract[.]" *Glen Alden Coal Co.*, 32 A.2d at 235 (footnote omitted).

Our review of the record discloses that in the early 1900s, the owners of the real estate overlying D District executed the Coal Severance Deeds. Each of the Coal Severance Deeds conveyed to the grantee "**[a]ll** the Pittsburgh or River vein of coal in and under that tract of land in Franklin Township, Greene County, Pennsylvania …."   Deed (Pratt to Lackey), 1/29/1900 (emphasis added); *accord* Deed (Taylor to Patterson), 3/3/1900. The Coal Severance Deeds conveyed the coal estate,

> [t]ogether with the free, uninterrupted use and enjoyment of right of way into and under said land at such points and in such manner as may be considered proper and necessary for the advantageous and economical operation of, and in the digging, mining and carrying away of said coal, and without liability therefor, **and hereby waiving <u>any and all</u> damages that might or could arise therefrom by reason of such digging, mining and carrying away of all said coal,** together with the privilege of carrying, transferring and removing through said described premises this and other coal now owned or hereafter acquired by said party of the second part, his heirs and assigns, reserving the right to drill said coal for oil and gas.

Deed (Pratt to Lackey), 1/29/1900, at 2 (emphasis added); *accord* Deed (Taylor to Patterson), 3/3/1900, at 1-2 (emphasis added).   The Coal Severance Deeds conveyed to Emerald the right to mine "all" coal underlying the surface, and expressly waived all liability for damages, including damages to the surface, caused by the removal of said coal.  Through this language, the Coal Severance Deeds expressly waived the right of support of the surface estate.

This interpretation is further supported by subsequent deeds in Emerald's chain of title.  For example, while conveying the rights secured

through a Coal Severance Deed from the Administrators of the Estate of Ezra M. Sayers ("Sayers") to J.D.C. Miller ("Miller"), the subsequent deed conveyed to Miller

> [a]ll the Nine-Foot Vein of coal, known as the Pittsburgh or River Vein ….

> *       *       *

> TOGETHER with the free and uninterrupted right of way into, upon and under both of said tracts of land and at such points and in such manner as may[]be proper and necessary to mine and remove all and every part of said coal **without being required to provide for the support of the overlying strata or surface** and without being liable in any event for any injury or damage done to the same or to anything therein or thereon by reason thereof, with all reasonable privileges for shafting, pumping, ventilating and draining the mines and the right to open, maintain and keep roads and ways in and through said mine forever for the transportation of said coal minerals materials and other things from other lands without being liable for any damage to said land or to anything therein or thereon.

> THE said first party[,] his successors and assigns, to have the right to drill through said Vein of Coal for oil and gas without liability for damages.

Deed (Sayers to Miller), 5/24/1920.

In summary, unlike the deed in **Penman**, the Coal Severance Deeds conveyed the right to "all" coal underlying the surface and expressly waived all liability for damages caused by the extraction of said coal. By their terms, the Coal Severance Deeds waived the right of support of the surface estate. Accordingly, we conclude that Texas Eastern's claim in this regard lacks merit.

Texas Eastern next claims "in light of eminent domain principles," it owns and controls the support estate underlying Line 2. Brief for Appellant at 12. Texas Eastern argues that its predecessor-in-title, Defense Plant Corporation ("DPC"), was "an entity created to aid the government of the United States in its National Defense Program." *Id.* at 10. Texas Eastern asserts that when DPC acquired the surface rights, it acquired the right to subjacent support through a *de facto* taking. *Id.* 12-13. Specifically, Texas Eastern argues that when an entity clothed with the power of eminent domain, *i.e.*, DPC, acquired the right-of-way, any preexisting contractual waiver to the right of support was transferred to the United States, in order to protect the public interest. *Id.* at 14. Because Texas Eastern is the United States' successor in interest, it argues, it is legally entitled to continue use of the support estate. *Id.*

In support, Texas Eastern directs our attention to case law holding that the right of eminent domain cannot be abridged or defeated by contracts between private owners, and that an entry by the state upon the surface constitutes an entry upon the subjacent strata so far as necessary to support the surface for, *inter alia*, pipelines. *Id.* at 14-15 (citing **Penn Gas Coal Co. v. Versailles Fuel Gas Co.**, 19 A. 933, 933 (Pa. 1890)). Texas Eastern argues that the trial court erred in concluding that the holding in **Penn Gas Coal** is limited to those cases where entry is made under the right of eminent domain. Brief for Appellant at 16. Additionally, Texas

Eastern, relying upon *Griggs v. Allegheny County*, 369 U.S. 84 (1962), argues that the government need not formally condemn property to acquire the support estate. Thus, Texas Eastern claims, the United States effectuated a *de facto* taking of the support estate. Brief for Appellant at 17.

"A *de facto* taking under either the 1964 or current Eminent Domain Code occurs when an entity with eminent domain powers substantially deprives property owners of the use and enjoyment of their property." *Williams v. Borough of Blakely*, 25 A.3d 458, 464-65 (Pa. Cmwlth. 2011). There are three elements required to establish a *de facto* taking. *In re Condemnation by Dep't of Transp. of Right-of-Way for State Route 0079, Section 290, a Limited Access Highway in Township of Cranberry*, 805 A.2d 59, 68 (Pa. Cmwlth. 2002) ("*Cranberry*"). "First, the condemnor must have the power to condemn the property." *Id.* Second, the proponent must establish that there are "exceptional circumstances" that substantially deprived the property owner of the beneficial use and enjoyment of the property. *Id.*; *see also Conroy-Prugh Glass Co. v. Dep't of Transp.*, 321 A.2d 598, 599 (Pa. 1974). Third, the proponent must demonstrate that the deprivation is "the immediate, necessary and unavoidable consequence of the exercise of the power to condemn." *Cranberry*, 805 A.2d at 68.

Here, Texas Eastern failed to demonstrate that DPC's <u>purchase</u> of the surface overlying Emerald's mine, where the right of support had been

severed, effectuated a *de facto* taking of the support estate.  The evidence does not disclose "exceptional circumstances" that substantially deprived Emerald of the beneficial use and enjoyment of its property.  There is no evidence that Emerald was precluded from mining under the property of DPC upon its acquisition of the surface estate.  Further, there is no evidence that any deprivation was the "immediate, necessary and unavoidable consequence of" DPC's purported right to condemn.  ***See Cranberry***, 805 A.2d at 68.

Texas Eastern's reliance upon ***Penn Gas Coal*** is unavailing.  In ***Penn Gas Coal***, the Pennsylvania Supreme Court explained that,

> [i]f the sale of the coal be made in the usual manner, the purchaser takes it subject to the burden of surface support, and cannot remove it without leaving a sufficient quantity to support the surface[.]  An entry in that case upon the surface has the same effect as though made before the sale of the coal, and the right to surface support residing in the owner of the surface passes to the corporation when it appropriates the surface.  If, in addition to severing the coal from the surface by a sale, the owner releases his vendee and the underlying estate from the obligation of surface support, the release is binding upon him and those taking title from him, but it cannot bind the state, or its grantee, entering by virtue of the title paramount residing in the sovereign.  ***The right of eminent domain cannot be abridged or defeated by the contracts between private owners, or by the release of the owner of the surface.  An entry by the state upon the surface is an entry upon the subjacent strata so far as they are necessary to support the surface for the purposes of the canal, railroad, pipe line, or other structure to be built thereon.***

***Penn Gas Coal***, 19 A. at 933 (emphasis added).  Under ***Penn Gas Coal***, to acquire both the surface and support estate, the Commonwealth must

acquire the property "by virtue of the title paramount residing in the sovereign[,]" *i.e.*, through the exercise of the power of eminent domain. ***Id.***

It is particularly notable that DPC did not exercise its "paramount title resting in the sovereign," if any, to acquire or compensate for the coal necessary to provide surface support. To acquire the coal necessary to support the surface, DPC was required to convene a State Mining Commission.

Pursuant to 52 P.S. § 1501, the State Mining Commission is vested with *exclusive* jurisdiction to determine, *inter alia*, "the amount of coal to be left in place for support purposes and to assess the damages suffered by the owner of the coal[.]" ***Moffat Appeal***, 161 A.2d 352, 354-55 (Pa. 1960). If DPC, acting on behalf of the United States, had sought to acquire the support estate, it could have convened a State Mining Commission within six years of its acquisition of the surface estate. ***See H.C. Frick Coke Company Appeal***, 42 A.2d 532 (Pa. 1945) (prior to the enactment of the Judicial Code, providing that an application to convene a State Mining Commission had to be filed within six years of the declaration of taking); ***see also*** 42 Pa.C.S.A. § 5527 (providing that "[t]he following actions and proceedings must be commenced within six years . . . (6) Any civil action or proceeding which is neither subject to another limitation specified by this subchapter nor excluded from the application of the period of limitation by section 5531 (relating to no limitation)."). Here, DPC did not convene a

- 14 -

State Mining Commission to acquire the support necessary for the Pipeline. Thus, our review reflects no evidence that DPC had acquired the support estate. Further, the lack of a State Mining Commission proceedings supports Emerald's interpretation of the Coal Severance Deeds as waiving the right of support of the surface.

Similarly, the United States Supreme Court's decision in **Griggs**, relied upon by Texas Eastern, provides no support. In **Griggs**, the Supreme Court recognized that "the use of land presupposes the use of some of the airspace above it. … An invasion of the superadjacent airspace will often affect the use of the surface of the land itself." **Griggs**, 369 U.S. at 89 (citation and internal quotation marks omitted). The "invasion," or "exceptional circumstances" that substantially deprived the property owner of the beneficial use and enjoyment of his property, was described by the Supreme Court as follows:

> Regular and almost continuous daily flights, often several minutes apart, have been made by a number of airlines directly over and very, very close to plaintiff's residence. During these flights it was often impossible for people in the house to converse or to talk on the telephone. The plaintiff and the members of his household (depending on the flight which in turn sometimes depended on the wind) were frequently unable to sleep even with ear plugs and sleeping pills; they would frequently be awakened by the flight and the noise of the planes; the windows of their home would frequently rattle and at times plaster fell down from the walls and ceilings; their health was affected and impaired, and they sometimes were compelled to sleep elsewhere. Moreover, their house was so close to the runways or path of glide that as the spokesman for the members of the Airlines Pilot Association admitted "If we had engine failure we would have no course but to plow into your house."

- 15 -

*Id.* at 87.

Unlike in *Griggs*, in the instant case, there is no evidence of an interference with Emerald's beneficial use and enjoyment of its mining rights by DPC, upon the construction or use of the Pipelines. There is no evidence that, by constructing the Pipelines, Emerald was immediately and unavoidably precluded from using all other mining methods to remove its coal. Simply put, there simply is no evidence that DPC or its successor, Texas Eastern, effectuated a *de facto* taking of the support estate.

Texas Eastern next argues that it acquired title to subjacent support of the Pipelines through adverse possession. Brief for Appellant at 19. Texas Eastern argues that, for over 50 years, and without interruption, "it has operated the Pipelines above the D District and physically supported them— from below—by continually occupying and using the support estate to protect its interstate Pipelines." *Id.* Texas Eastern asserts that Emerald has been on reasonable notice of this occupation. *Id.* According to Texas Eastern, the trial court erred in holding that the support estate cannot be acquired through adverse possession. *Id.* Texas Eastern disputes the trial court's rationale that Emerald did not lose the support estate simply because it refrained from making use of it. *Id.* at 20. Rather, Texas Eastern claimed that it acquired the right to subjacent support because it had been making active, hostile use of the support estate for over 50 years. *Id.* at 19.

"Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law. Accordingly, the grant of this extraordinary privilege should be based upon clear evidence." *Flannery v. Stump*, 786 A.2d 255, 258 (Pa. Super. 2001). "One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years." *Johnson v. Tele-Media Co.*, 2014 Pa. Super. LEXIS 179, *7. "Each of these elements must exist; otherwise, the possession will not confer title." *Id.* Similarly, "[t]o establish a property right by prescription, the use upon which it is based must be adverse to the rights of the owner of the land." *Flannery*, 786 A.2d at 258.

Texas Eastern cites *Cochran Coal Co. v. Municipal Management Co.*, 110 A.2d 345 (Pa. 1955), to support its contention that it has continuously and adversely trespassed upon the support estate for over 50 years. However, the circumstances in *Cochran Coal Co.* are far different from those in the instant case.

In *Cochran Coal Co.*, a coal company filed a cause of action in trespass to recover damages from a municipal water authority and management company ("the defendants"). *Id.* at 346. The coal company's complaint averred that the defendants had constructed a dam, filtration plant and pipelines "on lands in which the [coal company] has the right to use the surface[.]" *Id.* Further, the complaint averred that water had

escaped, through fissures and underground crevices, into the mine, depriving the coal company of the use of the coal under the dam. *Id.* Even though the authority was vested with the power of eminent domain, the Pennsylvania Supreme Court held that the coal company could assert a cause of action in trespass, based upon the defendants' "deprivation of the [c]oal [c]ompany's use and enjoyment of its property[.]" *Id.* at 347.

Here, there is no such trespass by Texas Eastern, or open, hostile or adverse actions, of Emerald's coal comprising the subjacent support estate. There is nothing of record suggesting that Emerald would be held liable for damages caused by the mining of coal under Texas Eastern's Pipelines. Further, there was no action or activity, undertaken by Texas Eastern, that deprived Emerald of its coal interests underlying the surface of D District. As such, Texas Eastern's claim of title to the subjacent support estate, through adverse possession, fails.

For the above-stated reasons, we deny Emerald's Motion to Quash, and affirm the Order of the trial court.

Motion to Quash denied; Order affirmed.

Ott, J., files a Concurring Statement.

Donohue, J., joins both Opinion and Concurring Statement.

J-A16021-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2014