## Gilmore *versus* Pittsburgh, Virginia, and Charleston R. R. Co.

1. In a proceeding to assess the damages caused by the construction of a railroad, the owner of the land offered to prove that the premises have been endangered more or less from fire, that on several occasions since the road was located and in operation, the fence on each side has been on fire, and that the property is endangered by fire. *Held,* that the offer as made was incompetent, first, because there was no attempt to show that operating the road had caused the fire, and, secondly, because injuries sustained after a railroad is completed do not constitute elements of damage to be assessed under the Act of 1849.

2. After the location of a railroad through the plaintiff's land, but before bond had been given to secure damages and actual entry made, the plaintiff planted the usual crops which were destroyed by the construction of the railroad. *Held,* that the destruction of his crops was an injury to the plaintiff, for which he was entitled to recover.

3. The compensation allowed for the injury caused by the exercise of the right of eminent domain is usually called damages, but it is, in fact, the consideration or price of a privilege purchased.

4. The court below is the best judge of its own rules; and much latitude will be allowed it in construing them.

5. When testimony which afterwards appears to be inadmissible is received without objection at the time, the proper course is to ask the court to instruct the jury as to its effect. It cannot be excepted to, and assigned for error.

6. Where the general charge of the court is assigned for error, it must be quoted totidem verbis in the assignment, as required by rule of court 23 ; otherwise it will not be considered.

October 15th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Washington county :* Of October Term 1883, No. 73.

This case arose upon a petition of the Pittsburgh, Virginia & Charleston R. R. Co., filed May 13th 1881, praying for appointment of viewers to assess damages occasioned by its entering on and constructing its railroad through land belonging to Susanna Gilmore, in Carroll township, Washington county.

The viewers so appointed awarded $550 damages, from which award an appeal was taken. In the issue framed thereon in which John Gilmore and Susanna, his wife, were plaintiffs, and the Pittsburgh, Virginia & Charleston R. R. defendants, a special jury was struck on motion of defendants to view the premises.

On the trial, before WHITE, J., of the fifth judicial district,

it appeared that the railroad company entered upon the plaintiff's land and built their road about June 13th 1879, at which time they gave their bond to the plaintiffs to secure the damages. At this time corn and potatoes were growing upon the land taken. The surveys for the road had been made some time previously. Gilbert Bake testified that it was located in 1868 or 1869. D. P. Corwin, the secretary of the railroad, testified the road was located early in 1871, and he was in a measure corroborated by another witness. Corwin was asked the following question : "Can you tell when the railroad was first located through the Gilmore property?" A. "I think early in the year 1871." Objected to by plaintiff as irrelevant. Objection overruled. Exception. (Fifth assignment of error.)

The same witness was offered to show that the road as surveyed and located in 1871, was occupied in 1879 by the construction of the road. Objected to as irrelevant. Exception. (Sixth assignment of error.)

The plaintiff offered to prove by James Gilmore "that the premises have been endangered more or less from fire, that on several occasions since the road was located and in operation the fence on each side has been on fire, and that the property is endangered by fire.

"Objected to because it is not properly a subject matter of damages under the Act of 1849."

By the Court. "All the facts in reference to the location of the property and its proximity to the railroad and passing cars may be given in evidence, but the jury will not be allowed to give any damages for probable accidents or fires in the future, and therefore the evidence is incompetent and bill sealed for plaintiff." Exception. (First assignment of error.)

Bake, a witness in behalf of the plaintiff and a resident upon their farm, was asked on cross-examination :

Q. Did you know where the road was to be built?"

"This question is asked for the purpose of following it with the question whether the witness did not know at the time the corn and potatoes were planted, that they were directly over the place where the road was to be constructed, and that the road was being constructed immediately above and below at the time, and that they were going on constructing the road through these fences.

"Objected to. First, because the witness is not the land owner. Second, it is not proper cross-examination. Third, because a land owner has a right to use his land until a bond is tendered him under the constitution and laws of the state." Objection overruled. Exception. (Second assignment of error.)

[Gilmore v. Pittsburgh, &c. R. R. Co.]

The depositions of M. W. Rankin, Jacob Lizel, and one Peterson, taken before A. K. Stevenson, a notary public at Pittsburgh, upon notice to counsel who were present, were offered in evidence by the plaintiff. It was shown that Peterson lived six miles below Monongahela city, Allegheny county, which is twenty miles from the county seat of Washington county. Rankin lived in Pittsburgh, some thirty-eight miles distant, and Lizel lived in Allegheny county, thirteen miles from Pittsburgh, on the Ohio, and by way of Pittsburgh, forty-four miles distant. How far distant by an air line did not appear. The admission of these depositions was objected to on the ground that they did not show compliance with the following rules of court.

Rule 108—"Rules may be entered, of course, to take the depositions of an absent, infirm or going witness, within five miles of the court house, on twenty-four hours' notice, and on four days' notice at any other distance not exceeding forty miles, provided the party file an affidavit of the facts necessary to entitle him to such rule. But the court, or a judge in vacation, may, when circumstances requiring it are proven to him by affidavit, by special order, authorize depositions to be taken on shorter notice." Rule 109—"No deposition of a witness residing within the limits last aforesaid, shall be read in evidence on the trial, unless the party offering it satisfy the court that a subpoena has been taken out and served, and due diligence used to procure his attendance, or that after reasonable inquiry the witness could not be found, or that he is at the time of trial not within the state."

By the Court. As the counsel differ as to what has been the construction of the court here on this rule, I am left to judge of it for myself. I construe this rule as requiring a subpoena to be served upon the witness residing within forty miles of the court house; such seems to be the plain reading of the rule. Whether attachment would be required in that case or not, I think is doubtful, for the rule does not appear to go that far, but taking the rule in its plain meaning, it requires a subpoena to be served upon the witness who resides within forty miles of the court house, if it can be served, and due diligence to be used to ascertain his residence; and according to the custom, too, these witnesses, Peterson and Rankin, reside within forty miles of the court house, and their depositions are ruled out, but the witness, Jacob Lizel, resides beyond forty miles from the court house, and his deposition is allowed to be read, and bill sealed for the plaintiff.

Objection sustained as to Peterson's and Rankin's deposition, and overruled as to Lizel's. (Third assignment of error.)

On the cross-examination of John Blythe, a witness called

'to prove the value of the land, it appeared 'that his estimate was based in part upon the hypothesis that there' might be glass works or brick yards or other improvements erected or made there. Plaintiff's counsel moved to strike out all the testimony of this witness relating to the value of the land. Motion refused. Exception. (Fourth assignment of error.)

The seventh assignment of error was to the general charge of the court, but the same was not printed as a part thereof, though printed elsewhere in the paper book.

. Verdict for the defendants, and judgment thereupon. The plaintiffs then took this writ, assigning for error the rulings of the court upon the offers of evidence made, the refusal of the court to strike out the testimony of the witness Blythe, and the general charge of the court.

*M. C. Acheson* and *John Barton* (with whom was *A. W. Acheson*), for plaintiffs in error.—The offer contained in the first assignment of error was to prove one of the causes of the depreciation in the value of the land, not to show the damages for probable future losses by fire. The testimony was admissible under Wilmington & Reading R. R. *v.* Strauffer, 10 P. F. Smith 374; D. L. & W. R. R. *v.* Burson, 11 P. F. Smith 369. As to the second, fifth and sixth assignments, it is unquestionably a rule of law that the railroad company acquires no rights as against the land owner until it gives him a bond. Prior to that time an entry upon the land for construction purposes is an unlawful act, a trespass. It follows that the owner's dominion over the soil, and his right to make use of the same, continue in full force down to the moment at which the bond is given. The position of the defendant upon this subject, which amounts to this, that as soon as the owner knows the location is made, he is bound to cease using the ground embraced in the appropriation, is therefore absurd. The extent of this absurdity is shown by the fact that, as appears by the evidence admitted, the road in question was located in 1871, and not constructed till 1879. Should the plaintiffs have deprived themselves of the use of their land for these eight years and claimed damages for this deprivation? But it may be said that, while they had the right to use the land until wanted, they took the risk of losing any crops which might be upon it when the bond should be given and construction of the road commenced. This, however, amounts to a practical deprivation of its use. The meaning of the rules of the court below is that no deposition of a witness residing within the county, and within forty miles of the county seat, should be read in evidence without subpoena and due diligence to secure

[Gilmore *v.* Pittsburgh, &c. R. R. Co.]

his attendance, it being unreasonable to suppose that the court intended to use its process beyond its territorial jurisdiction.

*A. M. Todd*, for defendant in error.—The offer was made to show that by reason of the running of trains, the fences had been set on fire. This might have led to the finding of damages from fire caused by the operation of the road; the offer was therefore incompetent: Newcastle R. R. *v.* McChesney, 4 Norris 522; Sunbury & Erie R. R. *v.* Hummell, 3 Casey 99; R. R. *v.* Lazarus, 4 Casey 203. Whatever loss was sustained by the plaintiffs in the damage done to their crops was the result of their own deliberate acts. As soon as the road was located the plaintiff's right to institute proceedings to assess damages is complete: Neal *v.* P. & C. R. R., 7 Casey 19; Wadhams *v.* L. & B. R. R., 6 Wright 310. The court below is the best judge of the meaning of its own rules of practice: Wickersham *v.* Russell, 1 P. F. Smith 72; Dailey *v.* Green, 3 Harris 118; Peck's Appeal, 11 W. N. C. 31. When testimony is offered without objection, and the court is not asked to charge the jury to disregard it, it cannot be made the subject of an assignment of error: Yeager *v.* Weaver, 14 P. F. Smith 425; Robinson *v.* Snyder, 1 Casey 207; Ashton *v.* Sproule, 11 Casey 495; Oswald *v.* Kennedy, 12 Wright 9. When the charge of the court is assigned for error, it must be quoted totidem verbis: Rule 23; Clark *v.* Smith, 1 Casey 137; Brown *v.* Brooks, 1 Casey 210.

The opinion of the court was delivered January 7th 1884, by Mercur, C. J.

This case arises on a claim of plaintiffs to recover damages by reason of the construction of the defendants' railroad on their land.

The evidence covered by the first specification of error was properly rejected. The offer contains three distinct propositions. 1. That the premises have been endangered from fire. 2. That the property is endangered by fire. 3. That since the road was operated, the fence on each side has several times been on fire. There is no offer to show that operating the railroad had caused the fire, or had, or would endanger the property. There are other sufficient reasons for its rejection: Distinct injuries sustained after the road is fully completed and operated do not constitute damages to be separately assessed under the statute. While the court rejected the offer as made, and said the jury would not be allowed to give any damages for probable accidents or fires in the future, yet all the facts in reference to the location of the property, and its proximity to the railroad and passing cars, might be given in evidence. This is all the plaintiffs were entitled to show. In forming his opin-

ion as to the measure of damages a witness may consider all the injuries which will probably and naturally result from the reasonable and usual operation of the road. ·Damages beyond these afterwards sustained, must be recovered by action on the case.

The evidence covered by the second specification, is not so free from error.

Under its right of eminent domain the Commonwealth may take private property for public use. Every person who owns lands in this state, holds it subject to that paramount right. The legislature may grant, and does grant, to railroad corporations and some others, the right to take private property for public uses. But neither the Commonwealth nor its locum tenens can take it without compensation.

Article XVI. section 8, of the Constitution declares, "municipal and other corporations and individuals, invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction."

When a railroad corporation and the owner of the private property taken or injured, cannot agree upon the amount of damages claimed ; and when the corporation has not paid them, the legislature has provided the manner in which they shall be ascertained, and directed how the payment thereof shall be secured. Until actual payment of the damages, or security given for their payment when ascertained, the corporation has no right to construct or enlarge its works on private property, nor to injure or destroy the same. By so doing before payment made or security therefor given, it becomes a trespasser ; and an action of trespass will lie against the party entering on the land, although the security be afterwards given : Dimmick *v.* Brodhead, 25 P. F. Smith 464 ; or if permanent possession by the laying of rails be thus illegally taken, the owner of the land can maintain ejectment to recover possession thereof : Levering *v.* Philadelphia, Germantown & Norristown Railroad Company, 8 W. & S. 459 ; McClinton *v.* Railroad Co., 16 P. F. Smith 404.

The witnesses do not agree as to the time the survey for the road was first made through the lands of the plaintiffs. Gilbert Bake fixes it in 1868 or 1869. D. P. Corwin, secretary of the defendant, swears he thinks it was first located there "early in the year of 1871." On cross-examination of this witness, the following questions and answers·appear.

Q. At what time was the first survey made along this line, and shown by centre stakes?

[Gilmore *v.* Pittsburgh, &c. R. R. Co.]

A. There was a series of surveys made, and evidenced by certain stakes on the ground. There were two lines run there.

Q. At what time was there a final location, and side stakes set?

A. In April or May 1879.

The whole work in constructing the road on the land of the plaintiffs was in the month of June 1879. Corn and potatoes were then growing on it. They were probably planted in April or May. Their destruction in making the road was claimed as an item of damage. The evidence covered by the second assignment appears to have been admitted under the view that no damages should be allowed for this item, if the plaintiffs knew when planting them, that stakes indicating location, had previously been set there, and the defendant was engaged in constructing the road on adjoining lands.

This is a misapprehension of the law, under the undoubted facts of the case. Conceding that stakes had been set on the ground either in 1868 or 1869, or not until 1871, or at each time, as it is shown two lines were run, the defendant thereby acquired no right to take possession and occupy the lands. Actual payment of damages or security therefor duly approved must precede the taking. The plaintiffs were under no legal obligation to refrain from using their property by reason of any expectation that the defendant might afterwards take it. Although the compensation is usually called damages, yet it is in fact the consideration or price of a privilege purchased. Until the company made a permanent location, it was not liable for damages under the statute. When these crops were planted it had not made such location, nor had it given the required security. The bond was not filed until in June 1879; whether before or after the land was taken, or when the bond was approved, does not appear. The defendant acquired no right to the possession until the security was approved by the court of Common Pleas. If the plaintiffs had refrained from using their lands for the eight or ten years which intervened between the running of the first line, and the final location of the road, it is very clear they could not have recovered damages for that interval of time. Until final location was made, the defendant was not in position to compel a sale of the privilege. Without payment or security it had no right to take possession. Prior thereto the plaintiffs' full right to the enjoyment of their property remained unimpaired. It follows the court erred in receiving the evidence covered by the second assignment.

3. Under the rule of allowing much latitude to a court in construing its own rules, we cannot say it erred in admitting the depositions of absent witnesses.

4. There was no error in refusing to strike out the testi-

mony of the witness named. It was received without objection. The proper course was to ask the court to instruct in regard to its effect: Ashton *v.* Sproule, 11 Casey 492 ; Oswald *v.* Kennedy, 12 Wright 9.

The 5th and 6th assignments are not sustained. The 7th is not assigned according to the rules and cannot be considered.

    Judgment reversed and a venire facias de novo awarded.