## Adams v. Metropolitan Edison Company

*Richard W. Davis, Davis, Katz, Buzgon & Davis,* for plaintiff.

*Daniel E. Long, Jr.,* for defendant.

GATES, P. J., October 7, 1968.—On April 13, 1967, plaintiff filed his complaint in trespass claiming damages arising from defendant's alleged unlawful entry onto the land of plaintiff.

On May 8, 1967, defendant filed its answer and new matter.

On June 1, 1967, plaintiff filed his reply to defendant's new matter, and, thereafter, on June 6, 1967, plaintiff filed a motion for a judgment on the pleadings.

On September 12, 1967, we filed an opinion and entered an order dismissing plaintiff's motion for judgment on the pleadings.

Thereafter, depositions of plaintiff were taken by defendant on November 9, 1967, but not transcribed or filed until April 26, 1968.

On April 26, 1968, defendant filed a motion for summary judgment under the provisions of Pennsylvania Rule of Civil Procedure 1035 on the basis of the pleadings and the deposition of plaintiff. Thereafter, plaintiff filed a motion to strike off defendant's motion for summary judgment, and we denied it by our order of April 30, 1968. Consequently, the matter before us is defendant's motion for summary judgment based upon the pleadings and the deposition of plaintiff.

A brief statement of the facts in this case are necessary to focus upon the one real issue presented by this record.

Adams is the owner of 66.582 acres of farmland in Union and East Hanover Townships of Lebanon County. Defendant is a public utility corporation organized and existing under the laws of the Commonwealth of Pennsylvania. In this action, Adams complains that from or about February, 1964, Metropolitan Edison Company trespassed upon his property doing damage to his crops and land. Further, Adams complains that, in September of 1964, Metropolitan illegally interfered with the lawful acts of Adams in building a home on his property at a point where Metropolitan determined its anticipated right of way was to be located. The alleged unlawful interference was

an equity proceeding filed to Equity Docket, 1964, no. 11, wherein Metropolitan sought an injunction against Adams to enjoin him from building on the proposed right of way.

It is Adams' contention that no application for a certificate of public convenience was made to the Public Utility Commission by Metropolitan until September 29, 1964, and that the certificate was not in fact issued until April 12, 1965. Adams alleges that no corporate action to condemn the property was taken by Metropolitan after the issuance of the certificate of public convenience on April 12, 1965, as required by law, and, therefore, the purported condemnation of Adams' premises is illegal and any entry upon the premises, with or without an order of court, is illegal and a trespass for which Adams is entitled to damages. Adams asks for compensatory, exemplary, punitive, and treble damages because of the alleged illegal acts of Metropolitan.

Metropolitan filed an answer to the complaint denying that it trespassed upon Adams' property at anytime prior to the effectuation of the condemnation proceeding and averring that the work stoppage on the residence structure by Adams was occasioned by reason of an agreement reached between Adams and Metropolitan after the hearing but before the court made any order.

Under the heading of "New Matter," Metropolitan avers that, beginning on February 14, 1964, and continuing through August of 1964, it negotiated with Adams with respect to the proposed purchase of a right of way easement for the construction of a transmission line across his land. Further, that in September of 1964, Adams began constructing a residential structure on his property at or near the center line of the proposed transmission line right of way. Upon learning this, Metropolitan commenced an action in equity

to enjoin Adams charging that he told Metropolitan to go ahead and condemn the property and that he would do everything he could to block the construction of the proposed transmission line across his land. Further, having learned through the negotiations of the location of the proposed right of way, Adams deliberately began the construction of a dwelling house on the center line of the right of way for the purpose of obstructing Metropolitan's application for a certificate of convenience and to increase the amount of damages which Metropolitan will be required to pay.

The complaint in equity also disclosed that the board of directors of defendant company had, on September 25, 1964, adopted a resolution condemning and appropriating the easement and had contemporaneously filed an application with the Pennsylvania Public Utility Commission for a certificate of public convenience. The theory of the utility was that there is a delay between the time of the application, hearing, and final issuance or denial by the Public Utilities Commission of the certificate of convenience which is a prerequisite to the effectuation of its right of condemning Adams' land, and that the deliberate building by Adams of a dwelling house on the center line of the right of way would furnish him with a basis of contending that the appropriation and condemnation is invalid and illegal under the law which exempts a dwelling house from condemnation and prohibits the transmission line from being located nearer than three hundred feet to a dwelling house or the reasonable curtilages thereto.

After the hearing on October 6, 1964, the parties agreed that Adams would not proceed further with the construction of the residence premises in dispute pending the outcome of Metropolitan's application for a certificate of public convenience and authorization to exercise the power of eminent domain and the ac-

tual exercise thereof by Metropolitan. It was further agreed that the basis of the agreement was to preserve Adams' right to recover such damages as he would have been entitled to recover if a permanent injunction had wrongfully issued, said right not to be affected by the agreement.

Under date of April 12, 1965, the Pennsylvania Public Utility Commission issued its certificate of convenience. Thereafter, on April 24, 1965, Metropolitan tendered a condemnation bond, unlimited in amount, to counsel for Adams. Adams refused to accept it. Consequently, on May 7, 1965, Metropolitan petitioned us to approve the bond and surety, after proof of service of notice to Adams as to the time of the presentation of the petition and bond. On that date, we approved the bond and directed it to be filed.

Thereafter, Metropolitan Edison Company attempted to enter upon Adams' property to construct the transmission line, and Adams refused to permit entry until damages were paid. On May 20, 1966, we issued a rule on the petition by Metropolitan for a writ of assistance which was returnable June 13, 1966. No answer having been filed, we made the rule absolute on June 16, 1966. Thereafter, Metropolitan entered the premises and constructed its transmission line.

On September 26, 1966, we appointed a board of viewers in the condemnation proceeding, and a view was held on May 2, 1968. That proceeding is still pending. This complaint in trespass was filed on April 13, 1967.

Plaintiff submits that there are two issues involved. Adams contends that these questions are as follows:

1. Was the attempted condemnation void?

2. May summary judgment be granted where there are substantial issues of fact involved?

On the other hand, Metropolitan submits that there are three questions presented by the posture of this record. These are as follows:

1. Can the court render summary judgment on the whole case at bar?

2. Can the court render summary judgment on part of the case at bar?

3. Is plaintiff precluded and foreclosed in this case from attacking the validity of condemnation proceedings followed by defendant?

On April 18, 1966, our Supreme Court adopted Pa. R. C. P. 1035, and made it effective as of May 9, 1966. This rule permits the court to enter summary judgment on the pleadings, depositions, answers to interrogatories, admissions, and supporting affidavits. Subparagraph (c) of the rule, by implication, authorizes the court to render summary judgment on portions of a case as well as on the case as a whole. This salutary rule is designed to limit and restrict trial issues by eliminating the issues which can be resolved by judgment based upon the pleadings, depositions, and supporting affidavits.

Of course, if there are substantial issues of fact involved, summary judgment is improper. But if there are no substantial issues of fact involved in the issues which form but a part of the case and which will render the trial less complex and will clarify only those issues in dispute, the court may enter an order in resolution of the issues based upon those parts of the case not disputed.

Pa. R. C. P. 1035 (c) is taken verbatim from the Federal Rule of Civil Practice 56 (d). While the rule is of recent vintage in our courts, there are a plethora of cases in the Federal Court system construing its parent, Fed. R. C. P. 56 (d).

It has been widely held that under this rule, if the court finds that a summary judgment cannot be

granted, because there are genuine issues of material facts to be tried, it is empowered to save time, expense, and greatly simplify the trial by making an order as specified in 56 (d). The order to be made is in the nature of orders made at pretrial hearings.

The expression "partial summary judgment" appears to have given even the Federal Courts some difficulty, because the expression "judgment" ordinarily is a decree or order from which an appeal lies. The rule, however, clearly indicates that a partial summary judgment is not a final judgment and is not appealable. To this extent, the expression "partial summary judgment" is a misnomer. However, the order made in partial summary judgment is clearly authorized as to those parts of the case about which there is no factual dispute, and the case can continue thereafter in light of the order expeditiously and with more simplicity. For an excellent discourse on the rule and on the subject of partial summary judgments, see 3 Barron and Holtzoff, 187, sec. 1241. See also Goodrich-Amram, §1035.

Put in this framework, it appears that this case is ripe for summary judgment on a portion of the case.

Adams claims damages for an alleged trespass on his property from Febuary, 1964, to the present date. His claim includes damages for the alleged illegal erection of the transmission lines over his land, including, inter alia, the costs of dismantling the transmission towers erected on the land by Metropolitan after May 7, 1965.[1] Metropolitan denies committing a trespass on Adams' land, claiming that it did not enter upon the land until after it was legally entitled to do so by reason of the effectuation of a condemnation proceed-

---

[1] Quere: Is trespass or ejectment the appropriate form of action where possession of an owner's land is illegally taken by a utility? See Gilmore v. Pittsburgh, Virginia, and Charleston R.R. Co., 104 Pa. 275 at 280; See also 3 Anderson Pa. Civ. Pract. §1051.2.

ing. Metropolitan contends that it made no entry on plaintiff's land until after May 7, 1965, when the condemnation bond, securing Adams' damages, was approved and filed with us. Thus, it is clear that there are issues of fact involving the damages claimed by plaintiff from February, 1964 until May 7, 1965. Damages thereafter are dependent upon the legality of the condemnation proceeding with respect to any damages for the taking and as a consequence thereof, of the land described in the certificate of public convenience.

Adams does not deny that he negotiated with Metropolitan from February 14, 1964, through August 1964, for the purchase of the right of way. Nor does he deny that Metropolitan applied to, and, after a hearing, received from the Public Utilities Commission, a certificate of convenience. It is undisputed that thereafter Metropolitan tendered the bond, and it was approved by the court on May 7, 1965.

However, Adams contends that on these undisputed facts, the condemnation proceeding is void, and Metropolitan's entry on his land and the erection of the transmission line was an actionable trespass.[2]

Adams does not submit that Metropolitan did not have the legal right to appropriate his property. On the contrary, this right is conceded. Adams' argument rests upon a construction of the statute authorizing such an appropriation.

The act in question, Act of May 8, 1889, P. L. 136, sec. 4, added May 21, 1921, P. L. 1057, sec. 1; 15 PS §3272 reads in pertinent part as follows:

"Every corporation heretofore or hereafter incorporated . . . shall . . . for the purpose of supplying light, heat, and power, or any of them, by means of electricity . . . have the following rights and powers:

"(b) to appropriate property, outside the limits of public streets, lanes, alleys, or highways and within

---

[2] See footnote 1.

the borough, town, city, or district where it may be located, necessary for its corporate use . . . for the transmission or distribution thereof, except that streams, rivers, or waters of this Commonwealth or any of them, or the land covered thereby, or other public property, or property of a public service company, or property used as a burying ground or place of worship, or a dwelling-house or the reasonable curtilage, not to be less than 300 feet, appurtenant thereto, shall not be appropriated by virtue of the power conferred by this subsection: Provided, That, for the purpose of transmission or distribution of electric light, heat, and power, or any of them, land covered by the streams, rivers, or waters of this Commonwealth, or any of them, may be appropriated by virtue of said power: And provided further, That before any such company shall exercise the power conferred by this subsection, the Public Service Commission of the Commonwealth of Pennsylvania,[3] upon application of such company, shall have found and determined, after public hearing, that the service to be furnished by said company through the exercise of said power is necessary or proper for the service, accommodation, convenience, or safety of the public. All damages arising from any exercise of the power conferred by this subsection shall be ascertained, recovered, and paid as provided by the forty-first section of the act, approved April twenty-ninth, one thousand eight hundred and seventy-four. (Pamphlet Laws, seventy-three,[4] and the amendments and supplements thereto".

It is Adams' simple submission that the resolution of the board of directors of Metropolitan on September 25, 1964, being prior to the date the certificate of public convenience was issued (April 12, 1965), contains language in the present tense as follows:

---

[3] Now known as the Public Utility Commission.

[4] Act of April 29, 1874, P. L. 73, sec. 41; Act of May 5, 1911, P. L. 112, sec. 1; 15 PS §3021-3023.

"Now, therefore, be it resolved, that this company under its corporate power enter upon, take, and appropriate a right of way . . ."

This, he submits, constitutes an illegal condemnation and appropriation of the right of way over his land solely because the language of the Act of May 8, 1889, supra, which requires approval of the Public Utility Commission before exercising the power of appropriation conferred by the act. This is indeed a simple but extremely strained contention.

A corporation is a legal entity, and, before it undertakes any action, it must do so by way of motion or resolution of the board of directors. But we know of no authority, nor has any been submitted to us, which would authorize a utility company in this Commonwealth to effect a condemnation or appropriation of private property by the mere passage of a resolution.

There are a number of conditions precedent to an effective condemnation by a utility company. The sequence of these conditions is not clearly spelled out nor does there appear to be any rational reason for having them performed in any given order. To suggest that the very first thing that must be done or else all that follows is a nullity is to get a certificate of public convenience is not supported by law or logic. Reason dictates that the first corporate step would be to resolve to undertake the condemnation so as to vest the corporate officers with the power to apply to the commission for approval and to incur the incident expenses.

The Constitution of Pennsylvania, in article 16, sec. 8, provides:

"Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improve-

ments, which compensation shall be paid or secured before such taking, injury or destruction. . . . "

Thus, if there were no other limiting legislation, a utility authorized by law to appropriate private property would merely have to first make just compensation or furnish security therefor before taking possession: Cf. McManus' Appeal, 5 Pa. Superior Ct. 65.

However, the Act of May 8, 1889, referred to hereinbefore, imposes an additional limitation and condition, namely, a certificate of public convenience issued by the Pennsylvania Public Utility Commission after a public hearing and a determination by that body that the appropriation is necessary and proper for the service, accommodation, convenience or safety of the public: Duquesne Light Company v. Upper St. Clair Township, 377 Pa. 323. This requirement, of necessity, commands the utility to do something prior to the hearing. This something, of course, is a survey and a plan prepared and submitted for approval with notice to the parties whose property is to be taken and a disclosure to them of the proposed taking so that they may contest and challenge the necessity or propriety of the taking. Inasmuch as surveying cannot be done in a vacuum, we are of the opinion that the utility company may reasonably enter the premises of a proposed condemnee for this purpose without being responsible in damages for a technical trespass. Actual damages done, of course, are compensable. The cases cited by counsel in their brief were all cases where actual injury or damages were involved prior to condemnation. In Ganster v. Metropolitan Electric Company, 214 Pa. 628, there was damage to a building and an actionable nuisance. In Gilmore v. Pittsburgh, Virginia, and Charleston R. R. Co., 104 Pa. 275, there was actual damages to and the taking of crops planted before the taking was effected. But the mere entry on

the land for this limited purpose, done in good faith for the purpose of preparing a plan for submission to the Public Utilities Commission does not, in our opinion, constitute an actionable trespass in the absence of real injury to the property.

After an adverse determination by the Public Utility Commission, either party may appeal to the Superior Court. Thus, the power or right of an electric company to appropriate lands or rights of way for the transmission and distribution of electricity is initially determined by the Public Utility Commission, and, if necessary, by the Superior Court on appeal.

Adams appeared at the hearing before the Public Utility Commission and testified. He was subsequently notified of the issuance of the certificate of public convenience and, being an aggrieved party, had the right to appeal to the Superior Court. This, he failed to do. Consequently, we are of the further opinion that the power and right of Metropolitan to appropriate Adams' property is now a foreclosed issue. The validity of this step in the condemnation proceeding may not be collaterally attacked in this case.

The Act of April 29, 1874, cited above and providing for the procedure for the assessment of damages and the appointment of viewers, by necessary implication creates another condition precedent, namely, that the condemnor negotiate or attempt to agree with the property owner as to the compensation to which he is entitled and it is upon failure to agree that viewers may be appointed. This condition, though not clearly spelled out, seems inherent in the language employed by the legislature: Petition of Penna. Tel. Corp., 34 Erie 58.

The act provides in pertinent part that:

"In all cases where the parties cannot agree upon the amount of damages claimed . . . the corporation shall tender a bond . . . to the party claiming or en-

titled to any damages . . . the condition which shall be that the said corporation will pay, or cause to be paid, such amount of damages as the party shall be entitled to receive, after the same shall have been agreed upon by parties or assessed in the manner provided for by this act: Provided, That in case the party or parties claiming damages refuse or do not accept the bond as tendered, the said corporation shall then give the party a written notice of the time when the same will be presented for filing in court, and thereafter, the said corporation may present said bond to the court of common pleas of the county where the lands . . . are, and if approved, the bond shall be filed in said court for the benefit of those interested, and recovery may be had thereon for the amount of damages assessed, if the same be not paid or cannot be made by execution on the judgment in the issue formed to try the question".

We believe that the legislators did not envision the necessity for the assessment of damages by viewers in all cases where utilities would appropriate private property for their uses. That vision, of course, has indeed become a reality. In the present case, according to the finding of the Utility Commission as contained in the new matter of defendant's answer, 209 of the 266 properties which would be traversed by Metropolitan's proposed transmission line have already executed satisfactory right of way agreements with the owners and viewers to assess damages therefore need not be appointed.

In interpreting these enabling and procedural statutes, we must not abandon common sense. The legislators apparently were aware of the willingness of many property owners, recognizing the necessity and the right of the condemnor to the property for public use, to negotiate and settle the damages without resort to litigation.

Nor does the law provide or require that there be an initial approval by the commission of the proposed extension of a facility by a utility company before it embarks upon its undertaking. To the extent that it is compelled to acquire rights of way therein through condemnation, it must establish necessity therefor before the commission as a precedent condition to the exercise of the power of appropriation: Duquesne Light Company v. Upper St. Clair Township, supra.

We are of the opinion that the Metropolitan has satisfied all of the conditions precedent to the effectuation of a legal taking of Adams' property. They attempted negotiations, but they were fruitless. They prepared the plans and specifications for submission with an application to the commission for its approval. The commission did in fact issue its certificate after a hearing, and no appeal was taken by Adams. They tendered bond which was refused. They applied to the court for approval, with notice to Adams. Still Adams refused to recognize Metropolitan's right to go upon the land and construct its transmission line, and Metropolitan returned to us for a writ of assistance which we issued, again, after notice to Adams. In brief, Metropolitan has complied strictly with the letter and the spirit of the enabling legislation and the provisions of the Pennsylvania Constitution. We find the fact that Metropolitan adopted a corporate resolution of condemnation before applying to the Public Utility Commission to be of no moment.

Consequently, we hold that this condemnation was effected and Metropolitan had the right to take possession and to enter the premises of Adams on the date the bond was filed and approved by the court on May 7, 1965. We reject the contention that a condemnation is effected by a utility on the date it passes its resolution of appropriation. We also reject plaintiff's contention that a corporate resolution may not precede the grant-

ing of a certificate of convenience. Both contentions are illogical and find no support in the law: Cf. Kearns, et ux. v. Pennsylvania Public Utility Commission, 201 Pa. Superior Ct. 174.

Finally, we must, in this proceeding, reject Adams' claim for damages arising out of the lawful appropriation of his property by Metropolitan after the date of taking and within the limits of the right of way, as well as consequential damages outside the right of way resulting from the taking, inasmuch as these damages are to be determined in the pending appeal from the award of the Board of Viewers. ·

One word needs yet to be said about Adams' contention that the proceeding in equity filed to Equity Docket, 1964, no. 11, was an unlawful interference with the peaceful and quiet enjoyment of his property. Quite apart from the fact that Adams agreed to act as if an injunction issued, namely, to cease erecting a dwelling premises on the known right of way, we are of the opinion that Metropolitan had stated a valid case for equitable relief.

As we noted hereinbefore, the preparation of a survey and plan, negotiations and attempts at settlement are required prior to an appropriation by condemnation. Apart from our findings that these steps are required, they are the most logical, reasonable, and sensible approaches and are favored by the law. But, if, in the undertaking of these conditions precedent, as is necessary and required in all cases, the property owners learn of the location of the right of way line and indicate their intent to thwart the condemnation, following which they commence to build a dwelling house on the centerline of the right of way, full well knowing that the utility has applied for or is about to apply for a certificate of convenience, and for the sole purpose of harassment, the utility company is entitled to equitable relief. We find that the law does not favor or

condone such conduct in condemnation cases anymore than it does in that line of cases where property owners race to establish a nonconforming use in zoning cases where they proceed to do so with full knowledge of a pending ordinance but before its final adoption: Cf. Penn Township v. Fratto, 430 Pa. 487; Honey Brook Township v. Alenovitz, 430 Pa. 614. It has long been the rule that a court of equity may grant an injunction to restrain acts contrary to equity as well as contrary to law: Stockdale v. Ullery, 37 Pa. 486.

We also must reject Metropolitan's submission that we enter summary judgment on the whole case, based on the pleadings and upon plaintiff's depositions. Adams' complaint as to damages prior to the appropriation is supported in part by his deposition. He there discloses the identity of other witnesses who have knowledge of these facts. Metropolitan, of course, denies these trespasses. Thus, we have substantial issues of fact for determination by a trial jury as to the trespasses and damages prior to the legal appropriation.

Furthermore, Adams claims Metropolitan trespassed upon and damaged his land outside the right of way subsequent to the taking. So, to the extent that these damages are not consequential to the taking and recoverable in the pending appeal from viewers, he has again stated a claim which is denied by Metropolitan. Thus, we are prohibited from entering a summary judgment on this aspect of the case.

Therefore, after careful consideration, we will make the following

### ORDER

And now, to wit, October 7, 1968, it appears that defendant lawfully appropriated a right of way over plaintiff's property on May 7, 1965, and, therefore, at the trial of this case, plaintiff shall be limited to the issues of liability for and the extent of damages, if

any, to his land occurring prior to May 7, 1964, and subsequent thereto, if outside defendant's right of way and not occurring as a consequence of the appropriation.